United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MARK THIGPEN,

Plaintiff(s),

vs.

CITY OF SAN MATEO, SAN MATEO POLICE DEPARTMENT, SAN MATEO POLICE OFFICERS BRIAN THOMPSON, RICHARD DECKER,

Defendant(s).
_______________________________________/

No. C 04-0264 MEJ

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

## I. INTRODUCTION

Before the Court is Defendants' Motion for Summary Judgment, or in the Alternative, Summary Adjudication, filed on June 9, 2005. After consideration of the parties' papers, oral arguments at the July 14, 2005 hearing, and relevant statutory and case law authority, and good cause appearing, the Court hereby GRANTS Defendants' Motion for Summary Judgment for the reasons set forth below.[1]

## II. BACKGROUND

### A. Factual Background

This is an action alleging false arrest and imprisonment and violation of the constitutional rights of the plaintiff, Mark Thigpen ("Plaintiff"), in connection with two events that occurred in 2003, while he was on

---

[1] In his opposition to Defendants' motion, Plaintiff requests a continuance pursuant to Federal Rule of Civil Procedure 56(f) because he "needs to do extensive discovery" and "[t]here is much discovery to be done." The Court denies his request. Although he filed his lawsuit on January 20, 2004, he did not propound and serve *any* discovery within the court-ordered discovery period.

parole.[2]

1. The events in January 2003

On January 10, 2003, Officers Thompson and Decker were conducting surveillance at the Shoreview Shopping Center in San Mateo - then known to law enforcement as an area of narcotics trafficking. Thompson Decl. at ¶¶ 2-3; Decker Decl. at ¶¶ 2-3. The officers were particularly interested in the activities of a suspected drug dealer who was loitering there. Thompson Decl. at ¶ 8; Decker Decl. at ¶ 8. At approximately 5:55 p.m., Officer Thompson saw the suspected drug dealer talking for several minutes with a man they later determined was Plaintiff. Thompson Decl. at ¶¶ 9-10.

Plaintiff and his female companion walked with the suspected drug dealer into a breeze-way where they spoke for several minutes. *Id.* at ¶¶ 10-12. The suspect used Plaintiff's cell phone to make a short call. *Id.* at ¶ 13. After the call, the suspect continued talking with Plaintiff. *Id.* at ¶¶ 13-14. The suspected dealer then walked west, through the breeze-way, and then north in the alley behind the shopping plaza. *Id.* at ¶ 15. Plaintiff and the woman he was with then returned to his parked car. *Id.* at ¶ 16.

Plaintiff had driven to the shopping center with the woman, who was his girlfriend, in his Ford Thunderbird. Thigpen Depo. at 41:9-23. When another officer ran the license plate number, the dispatcher informed the officers that the vehicle was registered to Plaintiff, who was a registered sex offender and a parolee. *Id.* at ¶ 11.

About ten minutes later, Officer Thompson saw the suspected drug dealer return through the breeze-way. *Id.* at ¶ 17. The suspected dealer went to the driver's door of Plaintiff's car and Plaintiff, who was seated there, opened the car door. *Id.* at ¶ 18. The suspect handed Plaintiff an item that had been in his right hand and Plaintiff passed it to his girlfriend. *Id.* at ¶ 19. Plaintiff then closed the car door and the suspected dealer walked about five feet away from the car, looked around the area for about thirty seconds and then returned to the car. *Id.* at ¶¶ 19-20.

---

[2] In his Second Amended Complaint, Plaintiff identifies himself as a "suspected career criminal." SAC at ¶ 9. Plaintiff came to California in about 1990, after committing crimes and spending time in detention facilities in Louisiana, Texas and Arizona. Thigpen Depo. at 97:1 - 100:25. After he had been living in California for about two years, Plaintiff pled no contest to charges of rape and assault with a deadly weapon, and spent multiple-year periods of incarceration in California's criminal detention system, including Pelican Bay, Delano, and San Quentin. He was paroled from San Quentin in or about January 2002 and was scheduled to remain on parole until January 2004. Thigpen Depo. at 27:15-28:7; 92:4-94:22.

As the suspected drug trafficker was away from the car and surveying the area, Plaintiff's girlfriend lifted a plastic sandwich baggie from her lap and held a corner in each hand. *Id.* at ¶ 19. As she did so, Officer Thompson states that he could see what appeared to him to be a white powdery substance in the bottom of the baggy that was approximately 1/4 inch in depth. *Id.* After Plaintiff and his girlfriend looked at the baggy, his girlfriend lowered it. *Id.* Plaintiff claims the cellophane wrapper contained a watch, and not a powdery substance. Thigpen Depo. at 133:1-11.

When the suspect returned to the driver's side of the car, Plaintiff opened the door and handed him what looked like a roll of paper, which Officer Thompson believed to be cash. Thompson Decl. at ¶ 20. The suspect palmed the roll in his right hand, walked away from the car and put it into the right front pocket of his pants. *Id.* Plaintiff and his girlfriend then got out of the car and traded seats. *Id.* at ¶ 21. The car left the shopping plaza with Plaintiff's girlfriend at the wheel and the sergeant who was tasked with following Plaintiff lost track of the car. *Id.* at ¶¶ 21-22. Consequently, Plaintiff and his girlfriend were not stopped and nothing could be done to investigate what Plaintiff had received form the suspected drug dealer. *Id.* at ¶ 22. Subsequently, on March 5, 2003, Officer Decker arrested the suspected drug trafficker when the suspect sold marijuana to an undercover police officer. Decker Decl. at ¶ 8.

On January 17, 2003, Officer Thompson contacted John Alvarez, Plaintiff's parole officer, and advised him of what had been witnessed at the Shoreview shopping plaza. Thompson Decl. at ¶ 24. Later that day, Officers Thompson, Decker and Monaghan, and Sergeant Daughtry, went to the Sequoia Hotel in Redwood City where Plaintiff claimed he was living. Thompson Decl. at ¶¶ 25-26; Decker Decl. at ¶¶ 9-10. When nobody answered the door to Plaintiff's room, the officers entered the room using a key provided by the hotel's assistant manager. Thompson Decl. at ¶ 26; Decker Decl. at ¶ 11. Although no contraband was found, from a cursory review of his cell phone bill which was on a table, the officers determined Plaintiff's cell phone had recently been used to phone a location where there had been complaints about drug dealing and another registered sex offender. Thompson Decl. at ¶¶ 27-28; Decker Decl. at ¶¶12-13. Before leaving, Officer Decker left his business card in Plaintiff's room. Decker Decl. at ¶ 13; Thompson Decl. at ¶ 29.

Neither Officer Thompson nor Officer Decker had anything more to do with Plaintiff until they were

United States District Court
For the Northern District of California

subpoenaed to appear at a parole revocation hearing at the Santa Rita Jail on March 28, 2003. Thompson Decl. at ¶¶ 31-33; Decker Decl. at ¶¶ 14-17. Up until the time they received the subpoenas, neither Officer Thompson nor Officer Decker knew that officers of the Redwood City Police Department had arrested Plaintiff at his room at the Sequoia Hotel on January 25, 2003. Thompson Decl. at ¶¶31-33; Decker Decl. at ¶¶14-17. None of the defendants had any involvement in requesting or making this arrest. Thompson Decl. at ¶¶ 31-33; Decker Decl. at ¶¶ 14-17.

2. <u>The events in December 2003</u>

On December 10, 2003, Plaintiff was pulled over by Sergeant Haney of the San Mateo Police Department ("SMPD") for a "fix-it" type infraction. Thompson Decl. at ¶ 34; Decker Decl. at ¶18. Although they had not made the traffic stop, Officers Thompson and Decker were in another squad car nearby at the time. Thompson Decl. at ¶ 35; Decker Decl. at ¶ 19. They arrived at Plaintiff's car after the traffic stop had been initiated, but before Haney had contacted him at the driver's window. When it was determined that Plaintiff was a parolee, a cursory search of Plaintiff and his vehicle were performed. Thompson Decl. at ¶ 35; Decker Decl. at ¶ 19. Officer Thompson conducted the search of Plaintiff and Officer Decker conducted the vehicle search. Thompson Decl. at ¶ 35; Decker Decl. at ¶ 19.

Plaintiff maintains that he was harassed in that he was pulled over for no reason - or on what he maintains was the pretext of an inoperable license plate light. Thigpen Depo. at 68:5-70:23. Plaintiff also claims to have suffered "mental anguish" during the traffic stop because it was witnessed by people he knew who lived in the area and who were driving in the area. *Id.* at 72:22-75:25. He said that he could see, through the corner of his eye, "everyone around looking." *Id.* at 74:8-18. He was not given a ticket or otherwise sanctioned as a result of this traffic stop, which lasted no more than ten minutes. *Id.* at 78:24-79:3; Thompson Decl. at ¶ 35; Decker Decl. at ¶ 19.

**B. Procedural History**

On January 20, 2004, Plaintiff filed a Complaint for Damages.

On February 17, 2004, Defendants filed a Motion to Dismiss and Motion to Strike pursuant to Federal Rules of Civil Procedure ("FRCP") 12(b)(6 and 12(f). On May 7, 2004, the Court issued an Order granting in part and denying in part Defendants' motion, with leave to amend.

United States District Court
For the Northern District of California

On June 13, 2004, Plaintiff filed a Second Amended Complaint for Damages.

On June 9, 2005, Defendants filed a Motion for Summary Judgment, or in the Alternative, Summary Adjudication, as well as the Declarations of Richard Grotch, Richard Decker, and Bryan Thompson in support thereof.

On June 23, 2005, Plaintiff filed an Opposition to Defendants' motion. Plaintiff filed no declaration in support.

On June 30, 2005, Defendants filed a Reply to Plaintiff's Opposition, as well as the Declaration of Elizabeth Rhodes in support thereof.

On July 14, 2005, the Court held a hearing on the matter.

## III. SUMMARY JUDGMENT STANDARD

FRCP 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.* The court may not weigh the evidence. *Id.* at 255. Rather, the nonmoving party's evidence must be believed and "all justifiable inferences are to be drawn in [the nonmovant's] favor." *United Steelworkers of American v. Phelps Dodge Corp.*, 865 F.2d 1539, 1542 (9th Cir. 1989) (en banc).

The moving party bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, interrogatory answers, admissions and affidavits that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). However, the moving party can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case. *Id.*

A party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of [that] party's pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see also Liberty Lobby*, 477 U.S. at 248. When the

United States District Court
For the Northern District of California

nonmoving party relies only on its own affidavits to oppose summary judgment, it cannot rely on conclusory allegations unsupported by factual data to create an issue of material fact. *United States v. 1 Parcel of Real Property*, 904 F.2d 487, 492 n.3 (9th Cir. 1990) (citing *Marks v. United States*, 578 F.2d 261, 263 (9th Cir. 1978). However, the opposing party need not produce evidence in a form that would be admissible at trial in order to avoid summary judgment. *Celotex*, 477 U.S. at 324. Nor must the opposing party show that the issue will be resolved conclusively in its favor. *Liberty Lobby*, 477 U.S. at 248-49. All that is necessary is sufficient evidence supporting the asserted factual dispute which would require a jury or judge to resolve the parties' differing versions of the truth at trial. *Id.*

**IV. DISCUSSION**

In his SAC, Plaintiff alleges that Officers Thompson and Decker were following and implementing a de jure and de facto policy of the San Mateo Police Department which “urged and rewarded officers for” (1) arresting any suspected “career criminal” on the street because of his “*status* as a suspected career criminal” and (2) “concocting false criminal allegations against such suspected career criminals. SAC at 3:19-26. Plaintiff alleges that he was arrested pursuant to this “municipal policy.” SAC at ¶ 9. Plaintiff further alleges that Defendant officers wrongfully fed false information to Plaintiff’s parole officer regarding the alleged drug transaction that occurred on or about January 25, 2003, resulting in his subsequent arrest. SAC at 2:9-10. He argues that the defendant officers, in violation of 42 U.S.C. section 1983, acted pursuant to a municipal policy implemented by the SMPD that urged and rewarded officers to target, harass, arrest, and concoct false evidence against any “suspected career criminal.” Plaintiff further contends that his arrest and incarceration in January 2003 were based on this policy. He points to inadequate training as the reason behind the officers’ conduct and avers that such a lack of proper training led to the abridgement of his constitutional rights.

In their motion for summary judgment, Defendants maintain that: (1) Plaintiff cannot prevail on a 42 U.S.C. 1983 claim because he has not proffered any evidence to establish the existence of a de facto municipal policy; (2) Plaintiff has no knowledge of the SMPD’s training practices and therefore cannot support an allegation of inadequate training; (3) Plaintiff cannot prove that he was deprived of any constitutional right; and (4) Plaintiff cannot show that Officers Thompson and Decker acted with deliberate

United States District Court
For the Northern District of California

indifference towards his personal safety. Additionally, Defendants argue that Plaintiff is barred from bringing any claims relating to the December 10, 2003 incident because he failed to comply with the procedural requirement of California Government Code section 945.5. Defendants further argue that Plaintiff's assertions of false arrest and false imprisonment have no evidentiary support because neither Officer Thompson nor Officer Decker arrested him.

**A. Claims Against City of San Mateo**

1. Existing municipal policy

Defendants first argue that Plaintiff has no admissible evidence to support a claim of the existence of an offending municipal policy. In *Monell v. N.Y. City Social Services Dept.*, 436 U.S. 658, 690-91 (1978), the Supreme Court held that liability under 42 U.S.C. section 1983 may be imposed on local governments only when their official policies or customs cause their employees to violate another's constitutional rights. The policy must be the moving force behind the alleged constitutional violation. *Id.* A plaintiff may establish public entity liability under a *Monell* theory by: (1) showing that a city employee committed the alleged constitutional violation under a formal governmental policy or longstanding practice or custom; (2) establishing that the individual that committed the constitutional violation was an official with final policy-making power; or (3) proving that an official with final policy-making power delegated to or ratified a subordinate's unconstitutional decision or action. *Gillette v. Delmore,* 979 F.2d 1342, 1346-1347 (9th Cir. 1992).

Here, it appears that Plaintiff attempts to establish *Monell* liability under the first theory of liability. In order to establish the existence of a governmental policy, custom, or practice, a plaintiff must plead specific facts, not merely conclusory allegations. *Zoe v. Family Court Services of Alameda County*, 1998 WL 292036 *7 (N.D. Cal. 1998). Additionally, the existence of a municipal policy or custom may not be proven solely by the occurrence of a single incident of unconstitutional action by a non policy-making employee. *Davis v. City of Ellensburg*, 869 F.2d 1230, 1233 (9th Cir. 1989). Finally, a plaintiff must show a direct causal link between the municipal policy and the alleged constitutional violation. *Monell,* 436 U.S. at 691-692.

Plaintiff claims that Defendants Thompson and Decker were acting pursuant to a policy that

encouraged officers to concoct false evidence and arrest people who were "suspected career criminals." SAC at 3:17-26. For Plaintiff to prevail, there must be a showing of specific facts that indicate the existence of an offending policy, longstanding practice, or custom within the SMPD. When given the opportunity during discovery to answer interrogatories which requested all facts in support of the existence of a de facto municipal policy that, according to Plaintiff, allegedly urged and rewarded officers to (1) arrest "suspected career criminals," (2) concoct false criminal allegations against "suspected career criminals," and (3) "sweep the streets of trash," Plaintiff responded that he "believes the San Mateo police had this policy but cannot prove it at present." *See* Defendants' First Set of Interrogatories to Plaintiff, Nos. 6 through 9, at p. 4, attached as Exhibit "B" to the Decl. Of Richard Grotch; *see also* Plaintiff's Response to Special Interrogatories, Nos. 6 through 9, at p. 2, attached as Exhibit "B" to the Grotch Declaration. When asked to produce those documents that would bolster his *Monell* claim, Plaintiff said only that he was unable to locate or produce documents supportive of his claim. *See* Plaintiff's Responses to Requests for Production, Category Nos. 1 through 30, attached as Exhibit "C" to the Grotch Decl. Similarly, when asked at deposition for evidence of an offending municipal policy, Plaintiff offered no substantive proof of any such policy. Thigpen Depo. at 147:6-148:5; 148:10-23. Plaintiff further admitted that he did not have any information in regards to who created the policy, when the policy was created, or how the policy was communicated from the municipality to the officers. *Id.* at 148:24-150:21. Thus, although Plaintiff has pled that a municipal policy exists, he offers no proof of a policy and opposes Defendants' motion with nothing more than conclusory allegations. Accordingly, the Court hereby GRANTS Defendant's motion for summary judgment as to the existence of an offending municipal policy under 42 U.S.C. section 1983.

2. <u>Inadequate police training</u>

Plaintiff also contends that the City of San Mateo failed to properly train its police officers in how to obey the Constitution while arresting people and that the lack of proper training was pursuant to official policies, procedures and customs, which makes the City liable for their misconduct. SAC at 7:19-23. Defendants maintain that Plaintiff's allegations of inadequate training by the SMPD are without merit because they are wholly unsupported.

The Supreme Court set a high standard for cases predicated upon inadequate training under

United States District Court
For the Northern District of California

Section 1983. *City of Canton v. Harris*, 489 U.S. 378 (1989). The standard requires a showing of "deliberate indifference" such that "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need. *Id.* at 388-390. Further, there must be a direct causal link between the inadequate training and the alleged constitutional violation. *Id.* at 385.

Previously, the Court dismissed this claim with leave to amend stating that Plaintiff had not alleged inadequate police training with enough specificity to entitle him to relief. May 7, 2004 Order Granting in Part and Denying in Part Defendants' Motion to Dismiss ("MTD") at 7:3-4. The Court explained that Plaintiff "must point to how the training practices equate to deliberate indifference such that the inadequacy is likely to result in a constitutional violation and show the direct causal link between the inadequate police training and the alleged constitutional deprivation." *Id.* at 7:1-9. Upon review of his SAC, the Court finds that the allegations of constitutionally deficient training are no more specific - and no more adequate - than in the original complaint. Further, his deposition testimony illustrates the lack of evidence. When asked to provide specific details concerning the inadequacy of SMPD training, Plaintiff gave vague and conclusory responses supported only by a stream of inferences. Thigpen Depo. at 103:1-104:7. Moreover, Plaintiff admitted that he knew nothing of the individual officers' training. *Id.* at 103:1-8. Thus, Plaintiff has not shown that the officers acted with deliberate indifference, and therefore has not met the standard set forth by the Supreme Court in *City of Canton*. As there is an absence of evidence to support Plaintiff's case, the Court hereby GRANTS Defendants' motion as to inadequate police training.

3. <u>Alleged constitutional deprivations</u>

Municipal liability under Section 1983 also depends upon proof that Plaintiff was deprived of a constitutional right he possessed. *Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992). In his SAC, Plaintiff adverts to violations of his liberty, due process, and equal protection rights, as well as his rights to free association and speech. The Court shall consider each in turn.

*a. First Amendment rights*

Although Plaintiff alleges that his first amendment rights of freedom of association and speech were violated by Defendants, his allegations remain unclear. In the SAC, Plaintiff alleges that Defendants

United States District Court
For the Northern District of California

interfered with his right to associate with the man with whom he admits exchanging money for something in a cellophane bag. SAC at 4:14-24. He then asserts that the SMPD arrested him pursuant to a municipal policy which encourages officers to punish any "suspected career criminal" for exercising his right to free speech and association, by encouraging arbitrary and mandatory arrests of any "suspected career criminal" seen talking to, or associating with, another "suspected career criminal." *Id.* at 5:6-10. However, the police did not have any contact with Plaintiff at the shopping center and he did not even know of their presence. Plaintiff admits that his allegations in this regard are baseless: he testified that there was no violation of his right of free association at any time before he was sent to Santa Rita Jail. Thigpen Depo. at 152:7-10. Plaintiff's SAC also appears to allege that his "arrest and incarceration deprived him of his constitutional rights to . . . freedom of association."[3] SAC at 12:7-8. But, at an absolute minimum, liability for this would require that Defendants arrested him, incarcerated him and controlled the conditions of his custodial confinement - none of which Defendants did. Furthermore, even if there were evidence that Defendants did these things, Plaintiffs fails to show how they "would chill the public's desire to take part in political parties or associations." Cf. *Connick v. Meyers*, 461 U.S. 138, 145 (1983).

Plaintiff also states that he "was exercising his right to free speech and association in January 2003, when he was talking to another man on the street in San Mateo (Norfolk Street), and he was thus associating with that man." SAC 4:18-24. Next, he asserts that the SMPD arrested him pursuant to a municipal policy which encourages officers to punish any "suspected career criminal" for exercising his right to free speech and association, by encouraging arbitrary and mandatory arrests of any "suspected career criminal" seen talking to, or associating with, another "suspected career criminal." *Id.* at 5:6-10.

In previously granting Defendants' motion to dismiss with leave to amend, the Court explained that "to cure the deficiencies in his complaint, Plaintiff must plead how his right to free speech was violated, how his speech was constitutionally protected, how the Officers restricted his freedom of speech, as well as how the restriction would further chill other persons from engaging in the same or similar activity." MTD Order

---

[3]At deposition, Plaintiff testified that employees of the San Mateo Police Department interfered with his constitutional right of free association because while incarcerated, he could not associate with people on the outside. THIGPEN depo. at 151:16-23.

at 10:24-27. In his SAC, he still has not sufficiently identified speech, let alone constitutionally protected speech, nor has he presented any evidence to substantiate these vague allegations. Accordingly, the Court finds that Plaintiff has failed to meet his burden and hereby GRANTS Defendants' motion for summary judgment as to his First Amendment claims.

*b. Equal Protection*

In his SAC, Plaintiff alleges that "[a]s to [his] equal protection rights, plaintiff was intentionally treated differently than other people because he was a s[uspected] c[areer] c[riminal]." SAC at 5:12-15. He opines that, "Defendants treated [him] intentionally in a different manner from other people by assuming he was committing a drug deal crime just because he was a 'suspected career criminal' seen talking to another 'suspected career criminal' from a distance. *Id.* at 5:15-19.

In previously granting Defendants' motion to dismiss with leave to amend, the Court explained that, "Plaintiff must indicate that he is a member of a specific protected class, that Defendants intentionally treated him differently from persons who were similarly situated, and that Defendants had no rational basis for his unequal treatment. MTD Order at 12:2-4. The Court finds Plaintiff's equal protection claim deficient because "suspected career criminals" is not a recognizable protected class.

Moreover, because of his status as a parolee, police officers were justified in treating Plaintiff differently than a non-parolee citizen. "In California, parolee status carries distinct disadvantages when compared to the situation of the law-abiding citizen." *People v. Lewis*, 74 Cal.App.4th 662, 669 (1999). "Even when released from actual confinement, a parolee is still constructively a prisoner subject to correctional authorities." *Id.* Thus, Defendants would only cross the line if their behavior was arbitrary, capricious, or intended solely for harassment. *People v. Zichwic*, 94 Cal.App.4th 944, 951 (2001). There is no evidence in this case that anything done by Defendants could reasonably be characterized as being undertaken in such a manner. Accordingly, the Court hereby GRANTS Defendants' motion as to Plaintiff's equal protection claim.

*c. false arrest*

In his SAC, Plaintiff alleges that "defendants arrested [him] in San Mateo and falsely contended that he had been buying and/or selling drugs on Norfolk Street in San Mateo, CA, [a]nd arrested him for

violation of Cal. Penal Code § 795, 'possession of controlled substance for sale.'" SAC at 2:26-3:3.

A claim for false arrest is cognizable under Section 1983 as a violation of the Fourth Amendment provided the arrest was without probable cause or other justification. *Dunaway v. State of N.Y.*, 442 U.S. 200, 208 (1979); *Dubner v. City and County of San Francisco*, 266 F.3d 959, 964-965 (9th Cir. 2001). Given this standard, Plaintiff's allegation fails. First, at his deposition, Plaintiff stated that he was arrested by officers of the Redwood City Police Department, not defendant Officers Thompson and Decker. Thigpen Depo. at 31:23-32:5. Second, Plaintiff does not address the indisputable fact that he was on parole at the time of arrest. As such, Plaintiff's position is significantly weakened in light of his parole status because the standard concepts of probable cause do not apply when dealing with an individual on parole.

As for Plaintiff's false arrest claim as it pertains to the December 10, 2003 incident, the Court previously dismissed the claim with leave to amend. MTD Order at 9:8-10. The Court explained that to cure the deficiencies, Plaintiff must plead specifically how the incident constituted an unlawful seizure, including the standard for searches of parolees by police officers. *Id.* at 10-11.
Plaintiff's SAC, however, remains silent on the issue of unlawful seizure and parolee searches. Thus, Plaintiff failed to cure the deficient portions of this claim and has come forward with no evidence to support his allegation. Accordingly, the Court hereby GRANTS Defendants' motion for summary judgment as to the Fourth Amendment claim of false arrest.

*d. false imprisonment*

In his SAC, Plaintiff alleges that in January 2003, he was unlawfully incarcerated without just cause in violation of his due process "liberty" interests under the Fourteenth Amendment. SAC 5:23. However, Defendants have shown that there is an absence of evidence to support this allegation. Specifically, Defendants have shown, and Plaintiff has failed to set forth any facts showing otherwise, that they did not imprison him and had no control over his imprisonment, the scheduling of his hearings, or anything else while he was in the physical custody of the Department of Corrections. Accordingly, the Court hereby GRANTS Defendants' motion as to Plaintiff's false imprisonment claim.

**B. Claims Against Officers Thompson and Decker**

United States District Court
For the Northern District of California

Defendants also argue that Plaintiff fails to support his allegations against the individual officers, Richard Decker and Bryan Thompson.

1. Defendant officers in their official capacity

In order to maintain an action against individual defendant officers, a plaintiff must plead and ultimately prove that the officers acted with "deliberate indifference" to his personal safety. *Redman v. County of San Diego*, 942 F.2d 1435, 1442-43 (9th Cir. 1991). Deliberate indifference requires proof that a municipal actor disregarded a known or obvious consequence of his action. *Christie v. Iopa*, 176 F.3d. 1231, 1240 (9th Cir. 1999).

In his SAC, Plaintiff alleges that the officers "concocted false allegations intentionally and deliberately as a pretext to arrest [him] because they stereotyped him as a 'career criminal.'" SAC at 3:3-5. He further alleges that "in doing so, defendants were showing deliberate indifference to [his] constitutional rights and safety and interests." *Id.* at 3:16-18.

While Plaintiff makes these allegations in his SAC, he presents no evidence that they actually occurred. However, even if Plaintiff were to present evidence, he would not prevail on this claim. First, as Plaintiff admits, neither Officer Decker nor Officer Thompson arrested him. Second, if his claim is that Officers Decker and Thompson intentionally fed false information to the Redwood City police in an effort to have him arrested, he presents no evidence of this. As such, the Court finds that Plaintiff's allegations are conclusory and unsupported, and hereby GRANTS Defendants' motion as to the defendant officers in their official capacity.

2. Defendant officers in their individual capacity

As to the defendant officers in their individual capacity, Plaintiff states that they "were rookies who acted beyond the scope of their authority in arbitrarily arresting and jailing [him] without probable cause." *Id.* at 7:14-15. Plaintiff refers to the defendant officers as "cowboy cops who shoot from the hip and exceed the law's limits." *Id.* at 7:16.

As the Court previously explained, to prevail on a cause of action against officers in their individual capacity, a plaintiff must present "nonconclusory allegations of subjective motivation, supported by either direct or circumstantial evidence." *Magana v. Commonwealth of the Northern Mariana Islands*, 107

United States District Court
For the Northern District of California

F.3d 1436, 1447 (9th Cir. 1997). According to his SAC, Plaintiff appears to allege that Officers Thompson and Decker were responsible for his arrest through the feeding of false information to the Redwood City Police Department, and therefore acted with deliberate indifference to Plaintiff's safety. However, without more, Plaintiff's allegations do not equate to proof that Officers Thompson and Decker acted with deliberate indifference. First, Plaintiff has not come forward with reliable evidence, either direct nor circumstantial, which conclusively connects Officers Thompson and Decker to the Redwood City Police Department in regards to the arrest in January 2003. Second, Plaintiff has not submitted evidentiary support for his theory that the subjective motivations of the officers were to "sweep the streets of trash." SAC 5:22-23. As such, the Court finds that Plaintiff's allegations are conclusory and unsupported. At the summary judgment stage, courts "apply a kindred rule . . . [which] requires[s] an increased evidentiary standard." *Magana*, 107. F.3d at 1447-1448. As Plaintiff has not met this standard, the Court hereby GRANTS Defendants' motion as to the officers' individual liability.

**C. Supplemental State Law Tort Claims**

In their motion, Defendants maintain that Plaintiff's supplemental state law claims for false arrest, false imprisonment, intentional infliction of emotional distress, and negligence are without merit.

1. <u>December 10, 2003 incident</u>

Defendants state that Plaintiff has failed to meet the requirements under California Government Code § 945.5 for the December 10, 2003 incident. The code provides that "no suit for money or damages may be brought against a public entity on a cause of action for which a claim is required to be presented . . . until a written claim therefor has been presented to the public entity" and rejected in whole or in part. Cal. Gov. Code § 945.4. This claim procedure is also applicable to the commencement of actions against public employees acting in their official capacity. Cal. Gov. Code §§ 950-950.6.

At the April 29, 2004 hearing on Defendants' Motion to Dismiss, Plaintiff's counsel stated that he had not met the requirement under section 945.4, but was in the process of doing so. However, the SAC only alleges that a claim was made on July 23, 2003 and denied on September 3, 2003 - prior to the events of December 10, 2003. Thus, as Plaintiff has not shown that he has met the administrative requirements under the Government Code, the Court cannot permit Plaintiff to bring his claims which relate

United States District Court
For the Northern District of California

to the December 10, 2003 incident and hereby GRANTS Defendants' motion on this issue.

2. False arrest and false imprisonment

In his SAC, Plaintiff alleges that "defendants caused [him] to be arrested and jailed for no valid reason" and that his arrest and incarceration "constitute false arrest and imprisonment."[4] SAC at 8:26-9:1-2. Plaintiff further alleges that the arrest and confinement were without probable cause or valid warrant. However, even if true, these claims do not survive summary judgment. First, as discussed above, Plaintiff admitted at his deposition that the arresting officers were from the Redwood City Police Department, not the City of San Mateo. Second, and also as discussed above, neither probable cause nor a valid warrant were required based on Plaintiff's status as a parolee, and he presents no evidence that anyone acted in an arbitrary, capricious, or harassing manner. Accordingly, the Court hereby GRANTS Defendants' motion as to Plaintiff's state law claims of false arrest and false imprisonment..

3. Intentional infliction of emotional distress

In his SAC, Plaintiff alleges emotional distress relating to the January 25 and December 10, 2003 incidents. On January 25, he points to the absence of probable cause as the basis for his intentional infliction of emotional distress claim. As to his December 10 claim, he points to his being detained "on a public street." SAC at 10:14-24. Defendants argue that Plaintiff's SAC fails to support his claim. The Court agrees.

A claim for Intentional Infliction of Emotional Distress ("IIED") depends upon allegations and proof that Defendants engaged in outrageous conduct, that Defendants intended to cause Plaintiff emotional distress, that Plaintiff actually suffered severe emotional distress and that the outrageous conduct of Defendants actually or proximately caused the emotional distress suffered by Plaintiff. *Cochran v. Cochran*, 65 Cal. App. 4th 488, 494 (1998); *Averbach v. Vnescheconombank*, 280 F.Supp. 2d 945 (N.D. Cal. 2003). Plaintiff must plead and ultimately prove that Defendants acts were so extreme as to exceed all bounds of that usually tolerated in a civilized community. *Cochran*, 65 Cal. App. at 494.

---

[4] False arrest and false imprisonment are the same tort with different terminology under California law. *Asagari v. City of Los Angeles*, 15 Cal. 4th 744, 753, note 3 (1997).

Here, as discussed above, Plaintiff is prohibited from asserting the IIED claim as it relates to the December 10, 2003 incident. As to the January 25 incident, summary judgment is appropriate. First, while Plaintiff alleges that Defendants intentionally concocted evidence to obtain an unlawful arrest, there is no evidence of this before the Court. Second, for the reasons discussed above, Plaintiff's "arrest" was lawful. Third, Plaintiff has not shown that Defendants' conduct rises to the level of outrageous, nor has he offered any psychological or medical evidence showing distress in support of his IIED claim. Accordingly, the Court finds that Plaintiff has not met his burden and hereby GRANTS Defendants' motion as to Plaintiff's IIED claim.

4. <u>Negligence</u>

Finally, Plaintiff brings a claim of negligence based on the January 25, 2003 incident. In his initial complaint, Plaintiff stated a cause of action for negligent infliction of emotional distress. However, the Court explained that California does not recognize a tort for the negligent infliction of emotion distress. MTD Order at 14:1-4. As such, to prevail on this claim, Plaintiff would have to plead the standard elements of negligence: duty, breach, causation, and damages. *Potter v. Firestone Tire & Rubber Co.*, 6 Cal 4th 965, 984-985 (1993). Plaintiff's initial complaint alleged that Defendants failed to exercise due care and that the breach proximately resulted in Plaintiff's sufferance of shock, emotional distress, anxiety, and loss of income. MTD Order at 14:8-9. As a result, the Court found that Plaintiff met the elements of breach, causation, and damages, but failed to plead the element of duty. *Id.* at 4:11.

In his SAC, Plaintiff attempts to allege the existence of a duty, but it is one which is not legally recognized. He states that "on or about January 25, 2003, Defendants owed a duty of due care to Plaintiff, because Plaintiff was a US citizen who had a right to be kept free from unlawful and arbitrary incarceration." SAC at 11:21-24. He further states that "because Plaintiff was a person known to Defendants and SMPD as a parolee with a criminal past, Defendants owed a duty to Plaintiff to be careful in observing him and in not acting negligently by arresting him on arbitrary or false or imaginary phantom 'evidence.'" SAC at 11:24-12:2. The Court is unaware of the authority upon which Plaintiff relies for the argument that such a duty exists. Moreover, even Plaintiff admits that Defendants did not arrest him. Accordingly, the Court finds that Plaintiff has failed to meet his burden and hereby GRANTS Defendants'

motion as to Plaintiff's claim for negligence.

## V. CONCLUSION

Based on the foregoing analysis, the Court hereby GRANTS Defendants' Motion for Summary Judgment.

**IT IS SO ORDERED.**

Dated: August 8, 2005

MARIA-ELENA JAMES
United States Magistrate Judge

United States District Court
For the Northern District of California